1
2
3
4
5
6           **IN THE UNITED STATES DISTRICT COURT**
7             **FOR THE DISTRICT OF ARIZONA**
8
**MALICK NJAI,**                        )
9                                       )
    **Petitioner/Defendant,**           )
10                                      )    **CR 02-0050 PHX SMM**
            **v.**                      )    **CIV 06-01991 PHX SMM (MEA)**
11                                      )
**UNITED STATES OF AMERICA,**           )    **REPORT AND RECOMMENDATION**
12                                      )
    **Respondent/Plaintiff.**           )
13  _____     )

14  **TO THE HONORABLE STEPHEN M. McNAMEE:**

15          Mr. Malick Njai ("Petitioner"), who is represented by
16  counsel in this matter, filed a Petition for Post-Conviction
17  Relief and Application for Writ in the Nature of Error Coram
18  Nobis on August 14, 2006.[1]  Petitioner seeks a writ of error
19  coram nobis declaring his March 2002 criminal conviction for
20  violation of 18 U.S.C. § 911,[2] entered pursuant to a written plea
21  agreement, was in violation of his constitutional right to the
22  effective assistance of counsel.  Respondent filed a response
23  (Docket No. 7) in opposition to the petition on December 1,
24  2006.  On January 2, 2007, Petitioner filed a reply to the
25  response.  See Docket No. 35.

26  _____

27          [1] The Court notes the petition was filed in the format of an
    appellate brief.

28
            [2] This section states: "Whoever falsely and willfully represents
    himself to be a citizen of the United States shall be fined under this
    title or imprisoned not more than three years, or both."

## I.  Procedural History

Petitioner is a native and citizen of Gambia.  See Petition (Docket No. 27), Exh. A.  Petitioner was admitted to the United States for a period of six months on June 20, 1995, pursuant to a non-immigrant visitor visa.  See id., Exh. A. Petitioner over-stayed his visa, married a United States citizen in 2000, and fathered a child born in the United States.  Id., Exh. B.  In November of 2001 Petitioner's then-wife (Patricia Njai) contacted United States Senator John McCain's office. Id., Exh. A.  Petitioner's wife feared Petitioner would take their child out of the country, to Gambia, without her permission.  See id., Exh. B.  Petitioner's wife further stated Petitioner had misrepresented his immigration status to her at the time of their marriage and that Petitioner had pressured her to file an application to adjust his immigration status based upon their marriage.  Id., Exh. B.[3]

Senator McCain's office notified the Immigration and Naturalization Service ("INS"), since 2003 known as Immigration

---

[3] The Court notes Ms. Njai filed a petition for divorce in the Maricopa County Superior Court in August of 2001.  See Docket No. FC2001-008730.  This action was placed on the Maricopa County Superior Court's inactive calendar in November of 2002.  Petitioner was represented by Mr. Kenneth Bemis, his federal criminal counsel, in the Superior Court proceedings.
In July of 2004, Petitioner initiated a custody and divorce action against respondent Ms. Njai, in which her parents intervened regarding custody of their grandchild.  See Maricopa County Superior Court Docket No. FC2004-070816.  Petitioner was represented in this matter by Mr. Ronald Saper.  A decree dissolving the marriage was issued in October of 2005.  As noted, infra, Petitioner was married in October or early November of 2005 to a Ms. Kimura.  Petitioner states he and Ms. Njai separated in March of 2003, and that he and Ms. Kimura began dating in April of 2003 and began living together in September of 2003.  Petition at 26.  Petitioner has, evidently been detained in ICE custody since May 5, 2005.  Id.

and Customs Enforcement ("ICE"), regarding the information conveyed by Ms. Njai. Id., Exh. B. The INS launched an investigation as to Petitioner's status as a resident of the United States. Id., Exh. B.

The INS investigation revealed Petitioner had been issued a Social Security Number which was not to be used for employment purposes. See Petition, Exh. B. The INS found that, in January of 2001, Petitioner had completed an I-9 employment form avowing he was a United States citizen or national. Id., Exh. 3. The investigation further revealed that Petitioner had acquired a certified nursing assistant certificate, and as of January of 2002, Petitioner had been employed for approximately one year. Id., Exh. B. Further investigation revealed Petitioner had used his Social Security Number for the purpose of being taxed on his wages. Id., Exh. B.[4]

On January 2, 2002, the INS arrested Petitioner and served him with a Notice to Appear. See Response to Petition for Post-Conviction Relief and Application for Writ in the Nature of Error Coram Nobis ("Response"), Exh. 1. The Notice to Appear charged Petitioner with being removable from the United States pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), as an alien who had overstayed his permission to remain in the United States. See id., Exh. 1.

---

[4] The INS also discovered Petitioner had used different names in association with his Social Security Number: "Further investigation, via credit databases, reveals that SUBJECT has used the names of MALICK JEAN and ELHADJJ MALICK NDIA YE with the SSN 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." Petition, Exh. B.

On January 3, 2002, Petitioner was arrested and taken into federal criminal custody on the two charges alleged in Docket Number 02 CR 0050, i.e., fraud and misuse of immigration documents and misrepresenting himself as a United States citizen. See Docket No. 1. Petitioner was represented by Mr. Kenneth Bemis in his federal criminal proceedings. Petitioner was detained in custody pending the resolution of his criminal proceedings. See Docket No. 2 & Docket No. 5. On March 15, 2002, a notice of the intent to introduce Petitioner's confession, admissions, or statements, was filed pursuant to Local 4.11, Local Rules of Criminal Procedure for the United States District Court for the District of Arizona. See Docket No. 16.[5]

On March 27, 2002, pursuant to a plea agreement, Petitioner was found guilty of impersonating a United States citizen, in violation of 18 U.S.C. § 911. See Docket No. 22. Pursuant to the plea agreement, a charge of fraud in the use of immigration documents, in violation of 18 U.S.C. § 1546(b)(3), was dismissed. Id. Petitioner was sentenced to time served and supervised release for a period of one year. See id.

---

[5]
On January 2, 2002, SUBJECT was advised of his Miranda rights and waived his right to presence of an attorney during questioning. SUBJECT admitted to have claimed to be a [United States citizen] on Form I-9, when in fact he is not a USC. SUBJECT admitted to have presented SSN 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 on Form I-9, and acknowledged that the SSN is not valid for employment purposes.
Petition, Exh. B (INS documents relating the investigation of Petitioner's immigration status).

At the plea hearing, the Court asked Petitioner if he understood his guilty plea could affect his immigration status:

> THE COURT: Now do you realize that by pleading guilty, this could affect your immigration status? Do you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Does the Immigration Service have a hold on you?
> THE DEFENDANT: Yes, sir.
> THE COURT: That doesn't mean that they are not going to hold you for deportation.
> THE DEFENDANT: Yes, sir.
> THE COURT: So you understand that you probably will be expelled from the United States. Do you understand that?
> THE DEFENDANT: Yes, I do.

Docket No. 26 at 3.

Additionally, the Court engaged in the following colloquy with Petitioner:

> THE COURT: Now it says here also that by pleading guilty, you're going to give up your right to take an appeal or collaterally attack this matter.
> . . . .
> THE COURT: "Collateral attack" is a habeas corpus proceeding, or some writ under the All Writs Act, or something like that, seeking to set aside your conviction. If you go back to Africa and you say "Gee, whiz, I never should have entered that plea of guilty, I'm going to file a habeas corpus," the government can move to dismiss it on the basis you've given up that right. Do you understand that?
> THE DEFENDANT: Yes. I would never do that. Once I go to Africa, that's over.

Id. at 12-13.

Petitioner was initially also represented by Mr. Bemis in his immigration proceedings. Petition (Docket No. 27), Exh. C.[6] Mr. Suriel was retained by Ms. Patricia Njai in May of 2002,

---

[6] The retainer provided by Petitioner so stating is dated January of 2001, one year prior to the initiation of removal proceedings. Petition (Docket No. 27), Exh. C. The document states Mr. Bemis was being retained to represent Petitioner regarding "Immigration matter

to represent Petitioner in his further immigration proceedings. Id., Exh. AE.  On or about April 11, 2002, the immigration allegations against Petitioner were amended to add an allegation pursuant to section 237(a)(3)(D) of the Immigration and Nationality Act,[7] i.e., that Petitioner had misrepresented himself as a United States citizen to acquire a benefit pursuant to state or federal law.  See Response, Exh. 2.

An alien is not eligible for relief from removal, i.e., cancellation of the order of removal or an adjustment of their residency status, if they would be "inadmissable" in seeking initial entry into the United States.  See, e.g., Cardoso-Tlaseca v. Gonzales, 460 F.3d 1102, 1107 (9th Cir. 2006).  An alien who is inadmissable is not eligible for an adjustment in their status to that of a lawful resident.  See id.; 8 U.S.C. § 1229b (2005 & Supp. 2006).

Petitioner, through counsel, sought to be allowed to remain in the United States notwithstanding the charges of removability, by applying for a change in his immigration status

and traffic violation in City of Phoenix." Id., Exh. C.  Mr. Bemis has stated in an affidavit he was retained to "petition for adjustment of status with the U.S. Department of Homeland Security on behalf of [Petitioner]" based on his marriage to a United States citizen.  Id., Exh. C.  Mr. Bemis states he did not so petition because Petitioner's wife, Patricia Njai, indicated she would not support a petition based on their marriage.  Id., Exh. C.  The Court notes the I-9 form falsely attesting Petitioner was a United States citizen or national was signed by Petitioner the same week as the retainer agreement.  See Response (Docket No. 34) at 5.

[7] This section, codified at 8 U.S.C. § 1182 (a)(6)(C)(ii)(I) states:
Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law is inadmissible.

to that of a lawful resident based on his marriage to a United

States citizen, presumably Patricia Njai, by means of an "I-360"

visa application. Id., Exh. 3.[8] Petitioner also sought waiver

of his removability on the basis of extreme cruelty by his

United States citizen spouse. Id., Exh. 3.[9]

Petitioner's removal proceedings were initially delayed

based on his pending application for an I-360 visa. Reply

(Docket No. 35), Exh. AJ. Upon motion of the government, the

---

[8] Even if Petitioner has been granted an I-360 visa, he still must apply for a change in his residency status from that of a lawful resident to that of a lawful permanent resident, after the requisite time period from the granting of the visa had passed. See 8 U.S.C. § 1255(a), noting the requirement of an I-485 application for adjustment of status to lawful permanent resident:

The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence......

A marriage entered into during removal proceedings may not provide a basis for the adjustment of status to a permanent legal resident. See 8 U.S.C. § 1255(e). Therefore, Petitioner's marriage to Ms. Kimura does not entitle him to seek lawful permanent residency based on this marriage.

[9] Immigration statutes provide some grounds of inadmissibility may be waived "for certain battered women and children" who demonstrate:

(I) the alien is a [Violence Against Women Act] self-petitioner;
(II) (a) the alien has been battered or subjected to extreme cruelty by a spouse or parent, or by a member of the spouse's or parent's family ..., or (b) the alien's child has been battered or subjected to extreme cruelty by a spouse or parent of the alien ..., and
(III) there was a substantial connection between the battery or cruelty described in subclause (I) or (II) and the alien's unlawful entry into the United States.

8 U.S.C. § 1182(a)(6)(A)(ii) (2005 & Supp. 2006).

-7-

proceedings were resumed on December 19, 2003.  See Response, Exh. 3.

The Immigration Judge ("IJ") was required to determine if there was sufficient evidence supporting the two alleged bases for removing Petitioner from the United States.  If the IJ concluded Petitioner was removable as charged, the IJ was required to determine if Petitioner was eligible for relief from removal by means of adjusting his residency status to that of a lawful resident.

Although the burden is on the government to produce evidence to sustain the charges of removability, an alien applying for adjustment of status bears the burden of showing that he is "admissible to the United States for permanent residence." 8 U.S.C. § 1255(a) (2005 & Supp. 2006); Pichardo v. INS, 216 F.3d 1198, 1200 (9th Cir. 2000) (explaining that an alien in removal proceedings "has the burden of establishing that he is clearly and beyond doubt entitled to be admitted and is not inadmissible...").

> Under 8 U.S.C. § 1255, an alien is eligible for adjustment of his status to that of permanent resident if, inter alia, he or she "is admissible to the United States for permanent residence." 8 U.S.C. § 1255(a) (emphasis added). An alien is not "admissible" if he "has falsely represented, himself ... to be a citizen of the United States for any purpose or benefit under this chapter ... or any other Federal or State law." 8 U.S.C. § 1182(a)(6)(C)(ii)(I).

Rodriquez v. Gonzales, 451 F.3d 60, 65 (2d Cir. 2006).  See also Lyamba v. Gonzales, 137 Fed. App. 91, 92  (9th Cir. 2005). Additionally, an alien who is deemed "inadmissable," because of their false representation of citizenship, is not eligible for

an adjustment of their status. <u>See</u> 8 U.S.C. § 1182(a)(6)(C)(ii)(1) (2005 & Supp. 2006).

A hearing regarding Petitioner's alienage was conducted before an IJ on February 25, 2003, approximately two years after Petitioner admitted to an INS investigator his false claim to United States citizenship and his entry of a guilty plea to the resulting criminal charge. Response, Exh. 3. Petitioner was represented by counsel at the hearing. <u>Id.</u>, Exh. 3. Petitioner conceded he had overstayed his visa, but denied he had misrepresented himself as a United States citizen. <u>Id.</u>, Exh. 3. Evidence was presented to the IJ that Petitioner had completed an I-9 employment form avowing he was a United States citizen or national. <u>Id.</u>, Exh. 3.[10]

In a written opinion issued March 15, 2004, the IJ found Petitioner removable on both of the grounds charged, i.e., overstaying his visa and falsely representing his citizenship, and also concluded Petitioner was ineligible for relief from removal as a battered spouse. <u>Id.</u>, Exh. 3. The IJ futher concluded that, because Petitioner was ineligible for relief from removal because he was inadmissable, Petitioner was ineligible for an adjustment of his immigration status based on his marriage to a United States citizen. <u>Id.</u>, Exh. 3. The IJ ordered Petitioner removed from the United States to Gambia. <u>Id.</u>, Exh. 3.

---

[10] The IJ's opinion states: "In his signed plea agreement, Respondent admitted that he falsely represented himself as a U.S. citizen by 'falsely completing a Form I-9, Employment Eligibility Verification Form, in order to secure employment at Westminster Village, In.," knowing that he was not a U.S. citizen. [Exhibit 6.]" Response, Exh. 3.

The IJ's written opinion noted that, as a matter of law, Petitioner could be found guilty of violating section 911 without necessarily being found removable pursuant to 8 U.S.C. § 1182(a)(6)(C)(ii)(I).  <u>Id.</u>, Exh. 3.  Had Petitioner misrepresented himself as a United States citizen without the motive of seeking a benefit awarded by a state or federal government, for example, he would have been eligible for a waiver of removability because he would not have satisfied the prohibition in 8 U.S.C. § 1182(a)(6)(C)(ii)(I).  <u>Id.</u>, Exh. 3. The IJ concluded that, because Petitioner had misrepresented his citizenship for the purpose of obtaining a job, i.e., a "benefit," he was ineligible for a waiver of removability.  <u>Id.</u>, Exh. 3.[11]

Petitioner, with the assistance of counsel, appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). <u>See id.</u>, Exh. 4.  The BIA dismissed Petitioner's appeal on or about April 27, 2005.  <u>See id.</u>, Exh. 4.  The BIA's decision made the order of removal issued by the IJ an administratively final order of removal.  <u>See</u> 8 U.S.C. §§ 1101(a)(47)(A) & (B)(i) (2005 & Supp. 2006).

Petitioner, again with the assistance of counsel, appealed the IJ's decision ordering him removed to the Ninth Circuit Court of Appeals in an action filed May 9, 2005.  <u>See</u>

---

[11] Mr. Suriel argued to the Immigration Judge, *inter alia*, that a 1991 INS opinion had established a job was not a "benefit" as that term is defined by the INA and, therefore, that violation of section 911 by means of a falsified I-9 could not constitute a ground of inadmissibility.  The IJ rejected this argument because the specific language of the relevant section of the INA had been changed since the issuance of the 1991 INS opinion.  <u>See</u> Response (Docket No. 34), Exh. 3 & Exh. 6.

1   Njai v. Gonzales, Docket No. 05-72696.  As of January 23, 2007,

2   that appeal was still pending before the Ninth Circuit Court of

3   Appeals; pleading in the matter was complete in December of

4   2005.  In the matter before the Ninth Circuit, Petitioner argues

5   an order of removal and a finding of ineligibility for relief

6   from removal may not be predicated solely on an alien's

7   completion of an I-9 form mis-stating their true immigration

8   status.

9          The petition for a writ of coram nobis asserts

10  Petitioner is entitled to relief from his criminal conviction

11  for violation of section 911 because Petitioner was not afforded

12  his right to the effective assistance of counsel in his criminal

13  proceedings.  Petitioner contends his criminal counsel, Mr.

14  Bemis, told him a conviction for violation of section 911 would

15  still allow him to be found eligible for lawful permanent

16  residency in the United States.[12]

17          Petitioner contends his counsel failed

18          to explain Petitioner's absolute defense to
            18 U.S.C. § 911.  These representations
19          induced both Petitioner's waiver of his right
            to jury trial and Petitioner's change of
20          plea. Petitioner suffered prejudice because
            his prospective testimony in support of
21          document fraud on Form I-9 would have
            provided him with an absolute defense to
22          count two under 18 U.S.C. § 911.  While
            Petitioner's proposed testimony would have
23          resulted in conviction of count one under 18
            U.S.C. § 1546(b)(3) that conviction would not
24          have interfered with Petitioner's adjustment
            of status to lawful permanent residency.

25

26  _____

        [12] The Court notes Petitioner is represented in this coram nobis
27  action by Lora B. Sanders of the Sanders Law Firm, although at least
    one pleading signed by Ms. Sanders has been received by chambers
28  mailed from the law office of Mr. Suriel, Petitioner's immigration
    counsel.

1

> Counsel's affirmative misrepresentation of immigration consequences constitutes ineffective assistance in violation of the Sixth Amendment because he failed to cure those misrepresentations and they resulted in prejudice.

Petition at 2.

With regard to whether he properly advised Petitioner at the time Petitioner entered his guilty plea in his criminal proceedings, Mr. Bemis states:

> Since I planned on filing for relief [from removal] under the Violence Against Women Act before the U.S. Immigration Court, Mr. Njai entered his plea to 18 U.S.C. § 911 in detrimental reliance on my affirmative representation that conviction of 18 U.S.C. § 911 would not affect his eligibility for that relief under the Violence Against Women Act... I have been informed that Mr. Njai is inadmissable and thus ineligible for that relief under the Violence Against Women Act on account of conviction...

Id., Exh. E.

> I never explained to Mr. Njai that he could proceed to jury trial and argue against 18 U.S.C. § 911 because his verification on Form I-9 claimed nationality as an alternative to U.S. citizenship.
> Prior to Mr. Njai's change of plea on March 27, 2002, he expressed strong sentiment about remaining in the United States by proceeding to jury trial or otherwise; he also told me that he had patience to wait for a criminal disposition that would produce better immigration consequences.
> I believe that Mr. Njai may have exercised his right to jury trial, despite the possibility of an upward departure at sentencing, if I had told him that a jury trial was his only chance to remain in the United States because it was the single opportunity to challenge count 2 by arguing against 18 U.S.C. § 911 because he claimed nationality as an alternative to U.S. citizenship on Form I-9.

Id., Exh. E.  Petitioner cites the decisions in United States v.

-12-

<u>Karaouni</u>, 379 F.3d 1139 (9th Cir. 2004) and <u>United States v. Kwok Chee Kwan</u>, 407 F.3d 1005 (9th Cir. 2005) in support of his arguments that Mr. Bemis' representation was constitutionally ineffective and that Petitioner's failure to seek relief from his criminal conviction earlier was reasonable.

## II.  Analysis

A writ of error coram nobis is a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody.  Specifically, the writ provides relief for those suffering from the lingering collateral consequences of an unconstitutional conviction based on errors of fact or egregious legal errors.  Where the errors are of the most fundamental character, such that the proceeding itself is rendered invalid, the writ of coram nobis permits a court to vacate its judgments. <u>United States v. Morgan</u>, 346 U.S. 502, 512, 74 S. Ct. 247, 253 (1954).[13]  However, the federal courts are cautioned to grant the writ only sparingly.  The Supreme Court has stated: "[I]t is difficult to conceive of a situation in a federal criminal case today where [the writ] would be necessary or appropriate." <u>Carlisle v. United States</u>, 517 U.S. 416, 429, 116 S. Ct. 1460, 1467-68 (1996).

---

[13] Where it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court.  Otherwise a wrong may stand uncorrected which the available remedy would right. *Of course, the absence of a showing of waiver from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the* accused to show otherwise...

> Coram nobis is an extraordinary writ, used only to review errors of the most fundamental character. ... To warrant coram nobis relief, [the petitioner] must establish that: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of a fundamental character.

Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002) (internal citation omitted).  See also United States v. Williamson, 806 F.2d 216, 222 (10th Cir. 1986) (holding the writ is available only to correct errors resulting in a complete miscarriage of justice).

A more usual remedy to attack his criminal conviction is not available to Petitioner.  Petitioner may not challenge his 2002 conviction by means of a section 2255 habeas action because he has completely served his sentence of incarceration and supervised release for this conviction. See, e.g., Blanton v. United States, 94 F.3d 227, 231 (6th Cir. 1996).

With regard to the second prong of the relevant test, Respondent contends Petitioner has not shown valid reasons exist for not attacking the conviction earlier by means of a section 2255 petition.  The Court notes Petitioner waived his right to a direct appeal and to collaterally attack his conviction and sentence in his written plea agreement.  However, notwithstanding the terms of the plea agreement, the federal courts have determined that an otherwise-waived section 2255 action may be considered if the petitioner asserts therein that their guilty plea was not knowing and voluntary because they did not receive effective assistance by counsel.  See, e.g.,

-14-

Washington v. Lampert, 422 F.3d 864, 869 (9th Cir. 2005), cert. denied, 128 S. Ct. 1228 (2006).

A section 2255 action arguing Petitioner's guilty plea was invalid because his criminal counsel was ineffective for advising Petitioner to plead guilty to violating section 911 would have been timely filed within one year of the date Petitioner's conviction became final, on or before March or April of 2003. The record indicates Petitioner's immigration counsel, Mr. Suriel, knew the potential consequences of the section 911 conviction at the time he undertook Petitioner's representation in April or May of 2002. Mr. Suriel briefed the issue in a pleading submitted to the Immigration Judge on January 15, 2003. Response, Exh. 6. Petitioner does not explain his failure to timely seek section 2255 relief from his conviction in April or May of 2002, when his immigration counsel would presumably have made him aware of the consequence of his conviction.[14]

Additionally, the petition for the writ of error coram nobis was not filed until August of 2006. Petitioner was presumably aware of the impact of his conviction for violating section 911 on his immigration status, and the alleged error in his criminal counsel's advice, no later than March of 2004, when the IJ issued his decision concluding Petitioner was ineligible for relief from removal. Petitioner contends he did not apply for the writ because he presumed his appeal to the Appeals

_____

[14] Petitioner asserts his "initial success" in his immigration proceedings effectively lulled him into believing he did not need to challenge his section 911 conviction.

Council would be successful, inter alia, because he had achieved his release from immigration detention. Reply (Docket No. 35 at 6). However, the Appeals Council denied the appeal in April of 2005, approximately 15 months prior to the date Petitioner filed his request for the writ.

Furthermore, the opinion in <u>Karaouni</u>, which Petitioner asserts provides the "absolute defense" ignored by Mr. Bemis, was available after 2004. Petitioner does not offer a valid reason for his failure to act sooner, i.e., after 2004 but prior to 2006, with regard to seeking correction of his criminal conviction. Compare <u>Kwan</u>, 407 F.3d at 1014. Petitioner himself asserts the conclusion in <u>Karaouni</u> was predicated on "decades of precedent including" <u>Smiley v. United States</u>, 181 F.2d 505 (9th Cir. 1950), involving a prison worksheet which was ambiguous as to the defendant's intent to commit fraud by claiming United States citizenship. Reply at 5.[15] However, other federal court opinions support the proposition that "decades of precedent" indicate Petitioner could have been convicted of violating section 911 by falsely reporting his citizenship status on an I-

---

[15] In <u>Smiley</u>, when the defendant was being booked, the defendant stated that he was born in New York and that he had lived in the United States for his entire life. The Ninth Circuit concluded this evidence was insufficient to sustain a conviction for knowingly falsely representing citizenship. However, the Ninth Circuit concluded that the defendant's statement "yes" to the question "Are you a citizen" at the time he was booked into jail was sufficient to sustain a conviction for violation of 8 U.S.C. 746 (the predecessor statute to section 911).

The Court notes that, with the exception of <u>Karaouni</u> and <u>United States v. Esparza-Ponce</u>, 193 F.3d 1133, 1137 (9th Cir. 1999), <u>Smiley</u> is rarely cited and most often for the proposition that, to be found guilty of violation of section 911, the false representation must be made to someone with a legitimate reason for inquiry into the individual's immigration status. <u>See</u>, <u>e.g.</u>, <u>United States v. Romero-Avila</u>, 210 F.3d 1017, 1020 (9th Cir. 2000).

9 form.   Compare United States v. Franklin, 188 F.2d 182, 187 (7th Cir. 1951) ("In defendant's employment application made to the Stronghold Screw Products Company, in answering the question: 'Citizen of U.S.?' he answered 'Yes,' thus violating section 911, title 18 U.S.C.A., as charged in count six."), and United States v. Anzalone, 197 F.2d 714, 718 (3d Cir. 1952) (concluding the defendant had not violated section 911 by representing himself as eligible to vote, because Pennsylvania law did not construe information on a voter registration card as a "direct representation" that the registrant was a United States citizen).

It is not disputed that adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III.

Petitioner contends the error in his criminal proceedings, i.e., the ineffective assistance of counsel, is of a fundamental character.   The Court agrees the deprivation of effective assistance of counsel would be fundamental error sufficient to warrant coram nobis relief if Petitioner could establish his counsel was indeed constitutionally ineffective for advising him to plead guilty to violating section 911 under the circumstances.   See Kwan, 407 F.3d at 1014-15; United States v. Mett, 65 F.3d 1531, 1534 (9th Cir. 1995); United States v. Esogbue, 357 F.3d 532, 534-35 (5th Cir. 2004); United States v. Rice, 379 F. Supp. 2d 1007, 1012 (S.D. Iowa 2005).   However, the Court concludes Mr. Bemis' performance was not constitutionally ineffective.

To establish that his counsel was constitutionally ineffective during plea proceedings, the two-part test stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984) is applied. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). The petitioner must show his counsel's advice as to the consequences of the plea was not within the range of competence demanded of criminal attorneys and that, but for counsel's advice, he would not have pled guilty. Id., 474 U.S. at 58-59, 106 S. Ct. at 369-70; Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990). The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Allen v. Woodford, 395 F.3d 979, 1005 (9th Cir. 2004), cert. denied, 126 S. Ct. 134 (2005).

Petitioner contends his counsel's performance was deficient because Mr. Bemis failed to inform him of an "absolute defense" to the charge Petitioner had violated section 911, i.e., that the I-9 form could be construed as evidence Petitioner had misrepresented himself as a United States national, rather than as a United States citizen.[16] The "absolute defense" asserted by Petitioner is provided by the 2004 Ninth Circuit Court of Appeals' opinion in Karaouni. See 379 F.3d at 1144-45. In Karaouni, the panel concluded misrepresentations of citizenship on an Employment Eligibility

---

[16] The use of the term "absolute defense" is disingenuous at best. Petitioner confessed to the acts forming the basis of his conviction.

Verification ("I-9") Form could not support a prosecution for violation of section 911 because one could be representing himself as a United States national, rather than a United States citizen.[17]  The substantive conclusion of law in Karaouni has not been cited with approval by any subsequent federal court, and the opposite conclusion was reached by a panel of the Tenth Circuit Court of Appeals in 2006 in Rana v. Gonzales, 175 Fed. App. 988, 997, citing Ateka v. Ashcroft, 384 F.3d 954 (8th Cir. 2004).

Petitioner contends that he "did not learn until recently that the District Court could not have convicted him at jury trial under 18 USC 911; the basis for this affirmative defense is akin to impossibility."  Reply at 2.  Karaouni was issued in 2004, approximately two years after counsel advised Petitioner regarding the plea agreement.  Counsel's performance was not constitutionally deficient because he failed to predict a future decision of a particular panel of the Ninth Circuit Court of Appeals, especially when the opinion has not been

---

[17]
> There are three essential elements of a § 911 violation. The government had the burden of proving beyond a reasonable doubt that: (1) [the defendant] made a false claim of U.S. citizenship; (2) his misrepresentation was willful (i.e. voluntary and deliberate); and (3) it was conveyed to someone with good reason to inquire into his citizenship status. []
> The first two elements are explicitly set forth in the statute: "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."  18 U.S.C. § 911.  The third element is a limiting construction that we have adopted in response to First Amendment overbreadth challenges. []

United States v. Karaouni, 379 F.3d 1139, 1142 & n.7 (9th Cir. 2004) (internal citations omitted).

followed by any other federal court.  Cf. Anderson v. United States, 393 F.3d 749, 754 (8th Cir.), cert. denied, 126 S. Ct. 221 (2005); Ekasinta v. Gonzales, 415 F.3d 1188, 1190 (10th Cir. 2005) (quoting the IJ as concluding: "To the general public, there is no distinction between being a citizen and being a national" and noting the IJ "found Petitioner's testimony that she had believed in such a distinction 'patently unbelievable[,] ... unconvincing and false.'").  The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant.  See Bullock v. Carver, 297 F.3d 1036, 1052 (10th Cir. 2002) ("clairvoyance is not a required attribute of effective representation"); Lilly v. Gilmore, 988 F.2d 783, 786 (7th Cir. 1993).

Additionally, counsel did not mis-state the law by telling Petitioner he could be convicted of violating section 911 and still be eligible for a waiver of removal.  As noted by the IJ, Petitioner could be convicted of violating section 911 and still be eligible for a waiver of removability depending on the specific facts alleged in the criminal matter.  See Response, Exh. 3.

Neither has Petitioner established prejudice arising from any alleged deficient performance by his counsel.  See United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989) ("even if petitioner could make the showing that his counsel's failure to advise him of the deportation consequences of his guilty plea was such that his performance fell below an objective standard of reasonableness, as is required by the first Strickland prong, he could not show that there is a reasonable probability that

but for his counsel's errors the result of the proceeding would have been different"). The Court is not persuaded Petitioner would have been granted a discretionary waiver of his removability, predicated only on the conceded allegation of over-staying his visa, regardless of a conviction pursuant to either section 911 or section 1546(b)(3). The language of the statute granting the Attorney General the power to waive this grounds of removability is permissive, rather than mandatory. 8 U.S.C. § 1255(a) ("The status of an alien ... *may* be adjusted by the Attorney General...."). The Court notes Mr. Bemis, experienced counsel, told Petitioner "his chances of deportation were high due to the testimony of his wife, regardless of whether he proceeded to jury trial or accepted the offer of the Assistant U.S. Attorney." Petition, Exh. E. Additionally, at the entry of the guilty plea the Court also advised Petitioner of the potential immigration consequences of his guilty plea, stating "... you probably will be expelled from the United States."

Although the factual underpinning of Petitioner's section 911 guilty plea disqualified him for adjustment of his residency status, Petitioner, in all likelihood, would not have been allowed to stay in the United States even if he had not pled guilty to this charge. It was unlikely Petitioner would have succeeded in adjusting his immigration status based on his marriage to a United States citizen, Ms. Njai, particularly when that citizen had filed for divorce and repeatedly charged Petitioner with crimes, although she often later recanted her statements. It is also highly unlikely Petitioner would have

been awarded relief from removal based on his contention he was a "battered spouse."[18]

Furthermore, counsel's advice was not deficient and Petitioner has not established a likelihood he would have proceeded to trial because, had Petitioner chosen to go to trial in his criminal matter, it was likely he would have been found guilty of both of the charges against him, based on the evidence of the falsified I-9 form and records from the Social Security Administration and Petitioner's confession thereto.   The Court

---

[18] To qualify for cancellation of removal under 8 U.S.C. § 1229b(b)(2) ( "Special rule for battered spouse or child"), a provision added as part of the Violence Against Women Act of 1994 ("VAWA"), [an alien must] demonstrate that she met each of the following five criteria:
    (1) that she had been "battered or subjected to extreme cruelty" by a spouse who is or was a United States citizen or lawful permanent resident;
    (2) that she had lived continuously in the United States for the three years preceding her application;
    (3) that she was a person of "good moral character" during that period;
    (4) that she is not inadmissible or deportable under various other specific immigration laws relating to criminal activity, including 8 U.S.C. § 1182(a)(2); and
    (5) that her removal "would result in extreme hardship" to herself, her children, or her parents.
8 U.S.C. § 1229b(b)(2)(A)(i)-(v). If [the petitioner] failed to establish any one of those criteria, she is not eligible for cancellation of removal under § 1229b(b)(2), even if she is a victim of domestic violence.
Lopez-Umanzor v. Gonzales, 405 F.3d 1049, 1052-53 (9th Cir. 2005).
    If evidence was presented that Petitioner married Patricia Njai for the purpose of obtaining legal residency, he would not be entitled to this relief.   See 8 U.S.C. §§ 1154(a)(1)(A)(iii)(I)(aa) & (B)(ii)(I)(aa) (2005 & Supp. 2006); 8 C.F.R. §§ 204.2(c)(1)(i)(H) & 204.2(c)(1)(ix) (2006).   It is highly unlikely Petitioner could establish the "good moral character" portion of the test, based on his conviction or his confession to the charge of fraud in the use of his Social Security Number, and his falsification of the I-9 form, which mis-stated Petitioner's immigration status regardless of whether it is construed as alleging nationality or citizenship.   False testimony under oath precludes a finding of good moral character under INA § 101(f)(6).   See 8 U.S.C.A. § 1101(f)(6) (2005 & Supp. 2006).

finds Mr. Bemis' statement that Petitioner "may" have exercised his right to a jury trial to be mere speculation. Petitioner could have been charged with additional crimes, rendering his desire to proceed to a trial and face convictions involving prison sentences even less likely. The Court further notes that supplying false information on an I-9 form also violates 18 U.S.C. § 1001(a)(2),[19] criminalizing any false statement in a proceeding before a government agency, not just a false claim of United States citizenship. Cf. Karaouni, 379 F.3d at 1142 (noting that not charging the defendant with violation of this section in that matter "may have been a tactical error..." on the part of the government). Additionally, Petitioner could have been charged with additional crimes rendering him inadmissable, including charges arising from his use of false names in association with his Social Security Number. Petitioner contends that, because conviction pursuant to 18 U.S.C. 1546(b)(3) would not render him ineligible for relief from removal, he would, absent his guilty plea to section 911, have been allowed to remain in the United States. The Court is not so convinced.

Petitioner's argument that his counsel's performance was constitutionally deficient rests on the conclusion reached by the United States Ninth Circuit Court of Appeals in Kwan,

---

[19] This section provides:
whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully ... makes any materially false, fictitious, or fraudulent statement or representation ... shall be fined under this title or imprisoned not more than 5 years, or both.

407 F.3d 1005. The undersigned finds <u>Kwan</u> clearly distinguishable from the matter before the Court. In <u>Kwan</u>, the petitioner for coram nobis relief was a resident alien who, based upon his counsel's advice, had pled guilty to bank fraud. The petitioner's counsel had represented to him that his guilty plea would have <u>no</u> adverse immigration consequences. After his release from prison, the government sought the petitioner's removal from the United States based on his conviction for bank fraud. The Ninth Circuit concluded the petitioner had stated "sound reasons" for not previously challenging his conviction, and concluded the petitioner had established his criminal proceedings involved fundamental error, i.e., the absence of the effective assistance of counsel.[20]

Unlike the criminal counsel in <u>Kwan</u>, Petitioner's counsel did not "actively mislead" Petitioner about the

---

[20]

We agree that where, as here, counsel has not merely failed to inform, but has effectively misled, his client about the immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence. Here, Kwan asked counsel whether pleading guilty would cause him to be deportable, and counsel chose to advise him. Moreover, counsel represented himself as having expertise on the immigration consequences of criminal convictions. Subsequently, counsel either failed to keep abreast of relevant and significant changes in the law or failed to inform Kwan of those changes' effect on the deportation consequences of Kwan's conviction. In either case, counsel never advised Kwan of the options that remained open to him prior to sentencing, and counsel never informed the sentencing judge that a sentence only two days shorter than the sentence ultimately imposed would enable Kwan to avoid deportation and remain united with his family.

That counsel may have misled Kwan out of ignorance is no excuse...

<u>United States v. Kwok Chee Kwan</u>, 407 F.3d 1005, 1015-16 (9th Cir. 2005).

-24-

potential immigration consequences of his guilty plea.  In Kwan, defense counsel had told his client there was "no serious possibility" he would be deported if he pled guilty.  As noted supra, both Petitioner's defense counsel and the Court informed Petitioner it was likely he would be deported.  Additionally, in Kwan, the nature of the count of conviction and the sentence imposed rendered the petitioner ineligible for relief from removal; in Petitioner's case, the facts admitted by Petitioner in his confession formed the basis for finding him ineligible for relief; the plea agreement and Petitioner's guilty plea merely duplicated those facts.[21]

Petitioner has not established that his counsel's advice was deficient or that, but for his counsel's advice he would have continued to trial and potentially been convicted of crimes also rendering him deportable and involving a sentence of imprisonment.

Petitioner argues that he placed "high value" on maintaining his eligibility for an adjustment of status at the time he entered his guilty plea.  Reply at 4.  However, as noted supra, it was unlikely that, under any set of circumstances, Petitioner would have been eligible for an adjustment of status; his now ex-wife, Patricia Njai, had previously exhibited her unwillingness to support a visa application based on their

---

[21] Furthermore, in Kwan the petitioner's failure to challenge his criminal conviction earlier was partially excused by the fact an Immigration Judge had initially concluded his crime of conviction was not an "aggravated felony," although a second IJ concluded it was an aggravated felony because the petitioner had been sentenced to a term of at least one year in prison.  See 407 F.3d 1005, 1013-14.

marriage, and there is no likelihood Petitioner would have qualified for relief pursuant to his allegation he was a battered spouse. Petitioner presents no evidence his now ex-wife battered Petitioner or their child; to the contrary, Patricia Njai sought and received an order of protection against Petitioner, although she later recanted those allegations. See Maricopa County Superior Court No. FC2001-008730. Although Petitioner has now acquired an I-360 visa, this visa was issued in 2006 and is not dispositive of whether Patricia Njai would have supported Petitioner's application for a visa in 2004, or whether Petitioner would ultimately be granted permanent legal residency after the requisite waiting period to adjust his status after his I-360 was approved.

Although Petitioner asserts "Mr. Bemis' affirmative misrepresentations resulted in Petitioner's inadmissibility, which disqualifies him from adjustment of status to lawful permanent residency," it was actually Petitioner's own criminal acts, to which he confessed, i.e., falsely stating on an I-9 form that he was a United States citizen or national when, at the time, he was an illegal alien who had overstayed his visa, and who had used a Social Security Number for employment purposes and under various names when such use was prohibited. Because Petitioner has not established that he was deprived of his right to the effective assistance of counsel, he has not established error of a fundamental character in his criminal proceedings. Accordingly, Petitioner has failed to satisfy the last prong of the relevant test for granting a writ of error coram nobis.

### III.  Conclusion

Petitioner has not established valid reasons exist for not attacking his conviction earlier.  Petitioner's counsel was not constitutionally ineffective for advising Petitioner to plead guilty because he failed to predict a later conclusion of the Ninth Circuit Court of Appeals.  Additionally, counsel did not actively mis-represent Petitioner's eligibility for an adjustment of his immigration status based on a guilty plea to violation of 18 U.S.C. § 911.  The Court also concludes that, but for counsel's allegedly deficient advice, it is unlikely Petitioner would have proceeded to trial and faced a sentence of imprisonment and convictions providing additional grounds of removability.

Petitioner rolled the dice before the Court at the time of his guilty plea.  After being informed by the Court and his counsel of the high likelihood he would be excluded from the United States, he chose to plead guilty.  Now that Petitioner has been adjudicated removable from the United States and ineligible for cancellation of removal, Petitioner claims foul and in hindsight blames his counsel.  The circumstances of Petitioner's case do not merit the extraordinary relief of granting a writ of error coram nobis.

**IT IS THEREFORE RECOMMENDED** that Mr. Njai's petition seeking a writ of error coram nobis be **denied and dismissed with prejudice.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir.) (en banc), cert. denied, 540 U.S. 900 (2003). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 23rd day of January, 2007.


_____
Mark E. Aspey
United States Magistrate Judge

-28-